IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POLY-AMERICA, L.P., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 14-599-SLR |
| API INDUSTRIES, INC., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM ORDER**

At Wilmington this 31st day of July, 2015, having heard argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of U.S. Patent No. 8,702,308 ("the '308 patent") shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. **"[E]lastic drawstring:"**[1,2] "A drawstring capable of being stretched or expanded and of resuming its former shape (i.e., made from an elastomeric material)." This construction is consistent with the specification, which states that "when the elastic drawstrings 116 and 118 are stretched over the upper lip 202 of the trash receptacle

---

[1] Claims 1, 2, 4, 10, 11, 13, and 16.

[2] Unless otherwise specified, the court relies solely on intrinsic evidence in reaching its claim construction. *See generally Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 834 (2015).

200 and released, the drawstrings 116 and 118 will contract and fit snugly around the trash receptacle 200." ('308 patent, col. 7:16-19) Because the intrinsic evidence does not provide further guidance regarding the properties of the elastic drawstring, the court turns to the extrinsic evidence. The court finds support for the adopted construction in standard dictionary definitions including *Webster's Third New International Dictionary of the English Language Unabridged* (1993) (defining elastic as "capable of being easily stretched or expanded and of snapping back and resuming its former shape") (D.I. 44, ex. A), and in technical dictionaries such as *Dictionary of Composite Materials Technology* (1989)[3] (defining elasticity as "[t]he ability of a material to quickly recover its original dimensions after removal of a load that has caused deformation") (D.I. 45, ex. 2).[4] In contrast, the court finds no support for plaintiff's proposal that the elastic drawstring must only "return . . . appreciably toward its length."

2. The parties agree that the construction should additionally state that the drawstring is made from either "an elastic polymeric material" or "an elastomeric material," two terms of art that the court finds to be equivalent for purposes of this claim construction exercise. (*See* D.I. 44, Ex. B (*The American Heritage College Dictionary* states that elastomer is derived from "[ELAST(IC) + (POLY)MER))

3. **"[S]hort seal:"**[5] "A seal for securing the elastic drawstring, which seal is located adjacent to a side seal, and that is not substantially aligned with the side seal,

---

[3] Defendant's expert, Dr. Koch, provided the unchallenged opinion that one of skill in the plastics industry would "routinely" consult this technical dictionary. (D.I. 45 at ¶ 20)

[4] Although defendant's proposed addition of "easily stretched" and "snapping back" is consistent with the extrinsic evidence, the court declines to adopt defendant's proposal as such language introduces unnecessary ambiguity.

[5] Claims 1, 2, 10, 11 and 16.

2

but extends inwardly from the interior edge of the side seal." This construction is consistent with the specification, which states "that one of the characteristics of the present invention is a reduction in the upper width 152 (when the bag is in a relaxed state) of the bag 100 resulting from the extended short seals 120." ('308 patent, col. 6:11-15; *see also* col. 4:4-8 ("[e]mbodiments of the elastic drawstring bag contemplated by the present invention have an upper opening with a width that is less than 97% of the width of the rest of the bag (by virtue of the extended short seals")) In distinguishing prior art, the specification adds, "[i]n contrast to a conventional non-elastic drawstring bag 400, the short seals 120 of the elastic drawstring bag 100 depicted are widened." (*Id.* at col. 5:46-48)

4. Additional support for inwardly-extended short seals is found in the prosecution history, where the applicant argued that a prior art reference does not anticipate because "the relaxed upper opening width and the bag proper width in [the prior art] is the exact same as the distance between the side seals . . . [and] thus fails to show a bag where the relaxed upper opening width is less than the bag proper width." (D.I. 59, ex. 2 at 112) Facing a subsequent obviousness rejection over the same prior art, applicant reiterated that "the short seals are merely an extension of the linear side seals," resulting in the relaxed upper opening width being the same as the bag proper width, "not less than the 'bag proper width,' as required by [a]pplicant's independent claims." (*Id.* at 154-55)

5. The court is unpersuaded by plaintiff's arguments that the adopted construction would improperly import a "reduced opening" limitation into claims 10 and 11 which, unlike claims 1-4 and 16, do not explicitly require a reduced opening. During

3

prosecution, applicant's arguments regarding a reduced upper opening were in response to a rejection of all claims (including independent claim 10), and applicant did not provide additional arguments supporting the proposition that a non-reduced upper opening would still be patentable over the prior art.[6] (*See generally* D.I. 59, ex. 2 at 111-13, 154-56) Additionally, broadening claim 10 to encompass a bag without a reduced upper opening would result in an unsupported claim given that the specification exclusively discloses embodiments in which the upper opening is less than the bag proper width.

6. **"[T]he first panel and the second panel joined at a first side seal and a second side seal and a bottom:"**[7] "Panels joined at a first side seal, a second side seal, and a bottom where the bottom may be a seal or a fold between the first panel and the second panel." Although the plain meaning of "join" might suggest uniting two separate panels, the specification defines "join" as encompassing both seals and folds by stating that, in a preferred embodiment, "the first and second panels 102 and 104 are joined at side seals 106 and bottom fold 108 to form the bag." ('308 patent, cols. 4:66-5:1) Independent claim 1, which claims "the first panel and the second panel joined at a first side **seal** and second side **seal** and a bottom," reinforces the notion that a seal is used for the sides, but not necessarily the bottom. (*Id.* at col. 7:29-30) (emphasis added) Independent claim 10, which does not specify how the panels are to be joined, similarly leaves open the possibility of joinder through a bottom fold. The court's

---

[6] In response to applicant's arguments, the examiner withdrew the rejection of all claims, writing, "Examiner agreed that the prior art fails to teach elastic drawstrings welded into the bag hem at short seals that form an upper opening that is less than the width of the bag." (D.I. 59, ex. 2 at 164; *see also id.* at 228)

[7] Claim 1.

4

interpretation of claim scope is consistent with Federal Circuit precedent, which instructs that excluding a preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

7. **"[T]he first panel and the second panel joined at a first side, a second side, and a bottom:"**[8] "Panels joined at a first side, a second side, and a bottom where each of the first side, the second side, and the bottom may be joined by a seal or a fold." The court's reasoning is recited, *supra*, in paragraph 6.

8. **"[A] polymeric bag comprised of a first panel and a second panel:"**[9] "A bag that has two sides formed from polymeric material." The court's reasoning is recited, *supra*, in paragraph 6.

9. **"[A] bag proper width:"**[10] "A distance between an interior edge of the first side seal and an interior edge of the second side seal." Not invalid under 35 U.S.C. § 112, ¶ 2 as indefinite. Claim 1 of the '308 patent explicitly defines "a bag proper width" as "a distance between an interior edge of the first side seal and an interior edge of the second side seal." ('308 patent, col. 7:45-47) The court finds no intrinsic support for defendant's proposal that the bag proper width be measured at a point "adjacent to the short seals." Moreover, the court does not find the term to be indefinite merely because the patent provides no objective criterion for where along the length of the side seals the width is to be measured. The definition in claim 1, coupled with the description in the

---

[8] Claim 10.

[9] Claims 1, 10 and 16.

[10] Claims 1 and 16.

5

specification of a bag proper width being "roughly the distance between the side seals 106 of the elastic drawstring bag 100" (*Id.* at col. 6:15-18), is sufficient to "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).[11]

10. **"[A] width of the bag proper:"**[12] "A distance between an interior edge of the first side seal and an interior edge of the second side seal." Not invalid under 35 U.S.C. § 112, ¶ 2 as indefinite for the reasons recited, *supra*, in paragraph 9.

_____
United States District Judge

---

[11] The court recognizes that differences in bag proper width relative to the relaxed upper opening width – which differences might fairly be attributable to defects in manufacturing or measurement error – may well arise as issues of fact suitable for expert opinion.

[12] Claim 13.